UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO(s): 19-CR-20674-GAYLES
25-CR-20154-GAYLES

UNITED STATES OF AMERICA

        *Plaintiff,*

v.

JOSE ARMANDO RIVERA

        *Defendant.*
_____/

**DEFENDANT JOSE ARMANDO RIVERA'S MEMORANDUM IN AID OF SENTENCING AND REQUEST FOR DOWNWARD DEPARTURE OR VARIANCE**

JOSE ARMANDO RIVERA, by and through undersigned counsel, pursuant to Rule 32 (f) of the Federal Rules of Criminal Procedure, Rule 88.8 of the Local Rules for the Southern District of Florida, and the due process clause of the Fifth Amendment to the United States Constitution, and respectfully submits this Memorandum in Aid of Sentencing in order to provide information to assist the Court in fashioning a sentence based upon the Defendant's guilty plea that is "sufficient but not greater than necessary" to achieve the statutory purposes of punishment as required by 18 U.S.C. §3553. Further, the Defendant requests that the Court consider his request for a downward departure or variance.

## STATEMENT OF FACTS

1. On June 24, 2025, Mr. Rivera entered a plea of guilty to Count Three of a three-count Sixth Superseding Indictment, Case No. 19-CR-20674-Gayles. Count Three charged the Defendant with Conspiracy to Commit Money Laundering in violation of 18 U.S.C.

   § 982(a)(1) and 18 U.S.C. § 981(a)(1)(C). Contemporaneously, Mr. Rivera pled guilty to a one-count Information (25-cr-20154-Gayles) charging him with Conspiracy to Traffic in Pre-Retail Medical Products with False Documentation, in violation of 18 U.S.C. § 670(a)(2) and (3).

2. Subsequent to the entry of the Defendant's plea a Presentence Investigation Report (PSR) was prepared by the United States Probation Office. This Report is approximately eighty-two (82) pages in length, in which Mr. Rivera is mentioned approximately fifteen times in the initial sixty-five pages, the remainder of those pages are devoted to the co-defendants' culpability. The Defendant has filed objections to facts and conclusions of law contained within the PSR and seeks in this Memorandum to provide the Court with insight as to who this individual, this human being, is.

3. The Sentencing Guideline Offense Level, calculated by the Probation Office, is 36 with a "range" of 188 to 235 months. The Defendant in his Objections contests the Probation Office's calculus in its determination of the offense level, see [DE 1151][1].

4. The sentencing in this matter is scheduled for October 30, 2025.

## INTRODUCTION

  Jose Armando Garcia is a forty-five-year-old man who finds himself for the first time in his life enmeshed in the criminal justice system. Born on the island of Puerto Rico he stands before the Court having acknowledged his culpability, remorseful and contrite but willing to accept the consequences of his actions.

---

[1] The government has filed its response to the PSR [DE 1156] and [DE 1157] in 19-cr-20674 and [DE 48] in 25-cr-20154 wherein, the government objects to the PSR's findings and concedes the position of the Defendant.

In *Booker*, the Supreme Court held that the Sentencing Guidelines are no longer mandatory and constitute only one of the sentencing factors that the Court must consider under 18 U.S.C. §3553(a); *United States v. Booker,* 125 S.Ct. 738, 757 (2005). Under *Booker,* sentencing decisions are subject to a "reasonableness" standard of review which must be measured against the factors outlined by Congress in §3553(a). *Booker,* 125 S.Ct. at 761. A sentence outside the advisory guideline range does not need to be justified by "extraordinary circumstances." *Gall v. United States,* 128 S. Ct. 586 (2007). Indeed, the Supreme Court has specifically rejected any presumption of unreasonableness for sentences outside the guideline range. *Gall,* 128 S. Ct. at 595.

In fashioning a sentence that is substantially reasonable, the district court has considerable discretion as to the weight it decides to give to each of the 3553(a) factors. *See United States v. McBride,* 511 F.3d 1293, 1297-98 (11th Cir. 2008) (noting that disagreement with how the sentencing court weighs certain factors is insufficient to reverse a procedurally reasonable sentence). In order to impose a sentence that is procedurally reasonable, the district court must correctly calculate the advisory guideline level, treat the guidelines as advisory and not mandatory, consider all of the statutory factors contained in 18 U.S.C. § 3553(a), make correct factual findings and provide an adequate explanation for the sentence imposed. *Gall,* 128 S. Ct. at 597. The Eleventh Circuit has advised that "*after it makes [its] guideline calculation, the District Court may impose a more severe or more lenient sentence as long as the sentence is reasonable.*" *See United States v. Crawford,* 407 F.3d 1174 at 1179 (11th Cir. 2005) (emphasis added); *See also United States v. Williams,* 456 F.3d 1353, 1363(11th Cir. 2006). The sentence imposed must be "sufficient but not greater than necessary" to achieve the four purposes of sentencing outlined in §3553(a)(2). *See United States v. Adelson*, 441 F.Supp.2d 506 (SDNY 2006) (finding the mechanical

application of the advisory sentencing guidelines in a fraud case where losses totaled $260 million would produce a sentence far greater than necessary for punishment under §3553(a)).

The Court must consider Mr. Rivera's individual history, family circumstances, and overall conduct to determine an appropriate sentence. Together with other evidence as to Mr. Rivera's character and individual conduct, a sentence at the low end of the guidelines set forth herein is warranted, given the statutory factors set forth in 18 U.S.C. §3553(a). As set out below, *each* of the applicable sentencing factors set forth in 18 U.S.C. §3553(a) amply justify such a sentence.

In the Eleventh Circuit, a guideline sentence is not presumptively reasonable. *See United States v. Campbell*, 491 F.3d 1306, 1313 (11th Cir. 2007); *United States v. Talley*, 431 F.3d 784 (11th Cir. 2005). Instead, district courts must determine on a case-by-case basis the weight to be given the guidelines, so long as that determination is made with reference to the remaining *§3553(a)* factors. *See United States v. Hunt*, 459 F.3d 1180, 1185 (11th. Cir. 2006) ("[t]here are . . . many instances where the Guideline range will not yield a reasonable sentence").[2] Now that the guidelines are advisory only, they are simply "one sentencing factor among many." *United States v. Reinhart*, 442 F.3d 857, 864 (5th Cir. 2006); *United States v. Duhon*, 440 F.3d 711, 715-16 (5th Cir. 2006). Accordingly, the Court has full discretion to sentence below the advisory guideline range without a motion for downward departure as long as the resulting sentence is reasonable.

---

[2] In application, the Eleventh Circuit has affirmed numerous below guideline sentences since *Booker* even without cooperation. *See, e.g., United States v. Montgomery*, Case No. 05-13935 (11th Cir. February 7, 2006) (8 month sentence for bank fraud)(unpublished); *See also United States v. Gray*, 2006 WL 1752372 (11th Cir. June 28th, 2006) (affirming 72 month sentence even though low end of guidelines was 151 months); *United States v. Halsema*, 2006 WL 1229005 (11th Cir. May 9th, 2006) (unpublished) (affirming 24 months sentence even though guidelines were 57-71 months and even though grounds for variance would not have supported departure); *United States v. Williams*, 435 F.3d 1350 (11th Cir. 2006) (90 months imprisonment was sufficient, but not greater than necessary to punish, deter and rehabilitate defendant even though low end of guidelines was 188 months).

*Williams*, 456 F.3d at 1363.

Here, the strict application of the advisory sentencing guidelines produces a sentence far greater than necessary for punishment under § 3553(a). Considering the *18 U.S.C. § 3553(a)* factors, Mr. Rivera warrants a sentence well below the guideline sentence he would receive if the Court simply followed the advisory guideline range set forth in Mr. Rivera's PSR. As set out below, *each* of the applicable sentencing factors set forth in *18 U.S.C. § 3553(a)* amply justify a reasonable departure/variance from the advisory guideline sentence.

In *United States v. Williams,* 435 F.3d 1350 (11th Cir. 2006) the Eleventh Circuit upheld the district court's 90-month sentence, which was less than half of the lowest sentence within the advisory Guidelines range of 188 to 235 months, where the district court correctly calculated the Guidelines range, weighed statutory factors, and gave specific, valid reasons for sentencing lower than this advisory range. In *Williams*, the defendant was designated a career offender due to a felony possession of cocaine with intent to sell or deliver, and a felony carrying a concealed firearm. *Id.* at 1352. Furthermore, the defendant's criminal history category, prior to the career offender enhancement, was V. *Id.* After the career offender enhancement, the defendant in *Williams* was subject to a level VI criminal history category.

In departing downward from a guideline range of 188 to 235 months imprisonment, the court stated:

> I think, in light of *Booker,* the Court is still required-and I give considerable deference and weight to the [G]uidelines because a great deal of thought and research and time has gone into developing them, and I think it's a worthy goal to try to obtain some degree of consistency throughout the country. On the other hand, there are occasions when the [G]uidelines simply produce an unjust result; and, in my view…188 months in prison for selling $350 worth of cocaine is akin to the life sentence for the guy that stole a loaf of bread in California. To me, that…does not promote respect for the law and is way out of proportion to the seriousness of the offense and to [Williams'] prior criminal conduct…The court also found a criminal history category of V sufficiently accounted for Williams' previous crimes. The

court stated in this instance, 'the **[G]uidelines…do not produce a just and reasonable result.**' It found the difference between sentences within the Guidelines range with the enhancement and without the enhancement **was too disparate to ignore**. Specifically, a base offense level of 23 (26 minus 3 points for acceptance of responsibility) with a criminal history category of V resulted in a Guidelines range of 84 to 105 months' imprisonment without the enhancement, while a base offense level of 31 (34 minus 3 points for acceptance of responsibility) with a criminal history category of VI resulted in a Guidelines range of 188 to 235 months' imprisonment with the enhancement….[the court] could not "in good conscience" sentence Williams to 188 months' imprisonment because it was unreasonable.

*Id. at 1352-53 (emphasis added).*

Here, a departure, as in *Williams*, would be reasonable under the *§3553* factors, as set forth in detail herein. Specifically, a sentence below the guidelines range to a sentence of 37 months or 46 months to run concurrently, would result in a sentence that is "sufficient, but not greater than necessary" and consistent with the negotiated pleas. *See Williams,* 435 F.3d at 1355*; See also United States v. Winingear,* 422 F.3d 1241, 1246 (11th Cir. 2005) (holding a sentence 1/10 the length of the 20-year statutory maximum sentence was reasonable).

Based on the PSR calculations of 36[3] and the Parties' agreed offense level, Defendant submits that a sentence of 37 months in Case No. 19-cr-20674-DPG and 46 months in Case No. 25-cr-20154-DPG with a downward departure/variance based upon the sentences received by similarly situated co-defendants[4] is "sufficient but not greater than necessary" for punishment under *18 U.S.C. §3553(a)*.

### FACTOR 1: NATURE OF THE OFFENSE AND HISTORY AND CHARACTERISTICS OF THE DEFENDANT

1. **Nature of the Offense**

---

[3] Again, the Defendant contests the PSR's calculation.
[4] Attached as Exhibit A is a compilation of the sentences meted out to co-defendants.

Mr. Rivera pled guilty to conspiracy to commit money laundering in violation of 18 U.S.C. §1956(h) (2019 Case) and conspiracy to traffic in pre-retail medical products with false documentation in violation of 18 U.S.C. §670(a)(2) & (3) (2025 Case). The loss amount for purposes of the calculation of the sentencing guidelines was $7.3 million in the 2019 case and $21,540,489 in the 2025 case. Notably, the other co-conspirators in the 2025 case were assessed at a loss amount of $7.2 million. *See Plea Agreements in United States v. Orel Valdespino Fernandez,* Case No. 24-cr-20045 [DE 49 at ¶ 10b]; *United States v. Alex Oria,* Case No. 24-cr-20108 [DE 76 at ¶ 10b]; *United States v. Diosdan Gonzalez Alvarado,* Case No. 24-cr-20254 [DE at ¶10b].

Mr. Rivera was intermittently involved in the conspiracy across different time periods. Moreover, he was a supplier of the prescription drugs and was not involved in the day-to-day operations of any of the companies in the indicted cases. Mr. Rivera was not involved in money laundering activities — although he did have knowledge of them and profited from them. As such, while accepting that Mr. Rivera pled to the loss amount in the 2025 case, Mr. Rivera asks the Court to consider his role as described in the PSR in comparison to the other co-conspirators and the effect aggregating the loss amount in both cases has on his sentence. In other words, the loss amount, i.e., $21 million, overrepresents Mr. Rivera's conduct in causing the loss.

1. **History and Characteristics of the Defendant**.

Mr. Rivera, while not the biological father, is a surrogate father to four children and has been with his partner for over eight years. He is a dutiful son who has cared for his parents in the sunset of their years. His father, who passed away two years ago, was attended to by Mr. Rivera. His mother, who suffers from dementia, has been living with Mr. Rivera for the past three years. He

has been the sole caretaker of his mother. He is the only surviving child and has been acknowledged by his friends for his care for and attention to his mother as praiseworthy. Carlos Navarro, the medical provider for Maria Rivera, Mr. Rivera's mother, describes her as suffering from cognitive impairment due to dementia (among many other issues) and says in his letter "…Considering these challenges, it is medically necessary for her to receive assistance from a dedicated caregiver. Her son…has been providing consistent, compassionate support, enabling her to remain in a stable, supportive home environment. His involvement is vital in promoting her comfort and ensuring she receives appropriate care in a setting that supports her physical and emotional health." [5]

Further, the probation office in the PSR at pages 78 and 79-Part E. "Factors that may warrant departure and/or variance" stated, in paragraphs 302 – 307, ample justification for a departure and or variance. Recognizing his unique position in providing for his mother and that his absence will "…cause a substantial, direct, and specific loss of essential caretaking…," (paragraph 303) and that " …the loss of caretaking substantially exceeds the harm ordinarily incident to incarceration for a similarly situated defendant" (paragraph 304). Finally, the probation office explains that "…the loss of caretaking or financial support for which no effective remedial or ameliorative programs reasonably are available, making the defendant's caretaking or financial support irreplaceable to the defendant's family" (paragraph 305).

### FACTOR 2: THE PURPOSES OF SENTENCING - (REHABILITATION, SPECIFIC DETERRENT, GENERAL DETERRENT, AND RETRIBUTION)

1.  **REHABILITATION:**

A sentence of incarceration between 188 and 235 months is far from necessary for Mr. Rivera's rehabilitation and would severely overstate Mr. Rivera's conduct and serve absolutely no

---

[5] See letter of Carlos Navarro, APRN, Exhibit B

rehabilitative purpose. In fact, as this Court is well aware, there are few rehabilitation programs within the Federal Bureau of Prisons. A departure/variance from the PSR recommended guidelines and a low-end sentence is sufficient, but not greater than necessary, for Mr. Rivera's rehabilitation. Mr. Rivera's timely acceptance of responsibility, and remorse for his actions attest to his beginning his rehabilitation. Mr. Rivera has demonstrated a desire to take responsibility for his actions and poor judgment. Additionally, Mr. Rivera has demonstrated an interest in using his time of incarceration productively to focus on improving himself, so he does not repeat the mistakes he has made in the past.

**2. SPECIFIC DETERRENCE:**

A lengthy period of imprisonment is not necessary to protect society from Mr. Rivera. Respect for the law arises from sentences that are neither too lenient nor too harsh. Mr. Rivera engaged in a conspiracy to commit money laundering (Case No. 19-cr-20774) and a conspiracy to traffic in pretrial medical products with false documentation (Case No. 25-cr-20154). A sentence as agreed to by the Parties is consistent with the need to reflect the seriousness of this conspiracy, the need to promote respect for the law, and the need to provide a just punishment for Mr. Rivera.

**3. GENERAL DETERRENCE:**

"General Deterrence" aims to deter *others* from committing crimes. While there is no question that the instant offense is a serious crime, sentencing Mr. Rivera to a lengthy prison term is not necessary for purposes of general deterrence. Mr. Rivera is not a high-profile defendant who lived a lavish lifestyle based on criminal activity whom the public is likely to see as being treated leniently unless he goes to prison for a lengthy period of time. On the contrary, his forthright remorse, and acceptance of responsibility offer an example to the public of the importance of timely accepting responsibility for one's wrongdoing. By rewarding Mr. Rivera appropriately for

his willingness to admit his illegal conduct, pleading guilty and accepting responsibility for his actions, the Court effectively sends a message to others who may be involved in criminal behavior that prompt acceptance of responsibility offers the opportunity to make up for prior wrongdoings. Such a message has at least as much value for general deterrence purposes as sending Mr. Arencibia to prison for a lengthy period.

4. **RETRIBUTION (JUST PUNISHMENT):**

While retribution is an important statutory factor under §3553(a), the overriding command of the law is for the Court to achieve a sentence that is "sufficient but not greater than necessary." *See United States v. Adelson*, 441 F. Supp. 2d 506, 515 (SDNY 2006) ("We are aware of no empirical evidence or studies indicating that a long prison sentence is necessary to achieve the retributive and general deterrence objectives applicable to a case like this one"). A sentence of 188 to 235 months imprisonment, as recommended by probation, would be greater than necessary and go well beyond the ideal of "just punishment," as well as rigorously overstate Mr. Arencibia's conduct herein.

## FACTOR 3: THE KINDS OF SENTENCES AVAILABLE

Title 18 U.S.C. §3553(a) expressly dictates that "[t]he Court shall impose a sentence sufficient, *but not greater than necessary*, to comply with the purposes set forth in ¶ (2) of this subsection" (*emphasis added*). As Judge Rakoff pointed out in *Adelson,* the operative word in this congressional mandate*,* is "necessary." 441 F. Supp. 2d at 515. Mr. Rivera requests a sentence of imprisonment consistent with the Parties' plea agreements. Based on the relevant sentencing factors present in Mr. Rivera's circumstances, and detailed herein, it is clear that the sentences calculated by the Government and the Defendant would be sufficient but not greater than necessary for punishment under 18 U.S.C. §3553(a). Specifically, Mr. Rivera is requesting the Court to

depart downward to a sentence of 37 - 46 months (as a starting point) as originally intended by the Parties in the plea agreements.

### FACTORS 4-5: THE ADVISORY SENTENCING GUIDELINES AND POLICY STATEMENTS

The PSR finds Mr. Rivera's total offense at level 36, with a criminal history category I, resulting in a sentencing range of 188-235 months. This is the advisory guideline range resulting from the PSR; however, Mr. Rivera requests a recalculation based on his objections [DE 1151].

### FACTOR 6: AVOIDING DISPARITY WITH SIMILAR OFFENDERS

A sentence consistent with the Parties' agreement avoids unwarranted sentencing disparities. Subsection 3553(a)(6) directs the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

Mr. Rivera's calculated range of 188-235 months is grossly disproportionate to his actual role and the co-defendant and coconspirators' sentences. See Chart at **Exhibit A**. For example, in the 2019 case,

- Stephen Costa, who was the "originator," received a sentence of 168 months despite being the conspiracy's architect (and having a criminal history of Category 4).

- Mohammad Salemi received 103 months, which has been reduced to 70 months and then 68 months, despite $78 million in sales.

- Lazaro Hernandez received 168 months for $78 million conspiracy (and having a criminal history of category 4).

- Other co-defendants received sentences ranging from probation to 87 months – prior to reductions for cooperation.

Only one coconspirator has been sentenced in the 2025 case, Orel Valdespino, who was sentenced to 33 months. However, Alex Oria, who is scheduled to be sentenced in November, is facing a maximum of 60 months incarceration.

Importantly, this factor is not limited to co-defendants, and the Eleventh Circuit has looked to other cases in deciding how this factor applies. *See United States v. Puch,* 515 F.3d 1179, 1203 (11th Cir. 2008). In *United States v. Riley,* 655 F. Supp. 2d 1298, 1305 (S.D. Fla. 2009), the Court specifically noted that numerous courts have imposed sentences that were substantially less than the recommended Guidelines range for this offense," in varying downward from the guidelines. *See also United States v. Irey,* 746 F. Supp. 2d 1232, 1243 (M.D. Fla. 2010) (noting that "Judges within the Eleventh Circuit . . . impos[ed] below-Guideline sentences 44.2 percent of the time and var[ied] downward by an average of 35.2 percent" between 2007 and 2009).

Multiple sources of data confirm the necessity of a variance to avoid unwarranted sentencing disparities. According to the JSIN platform, a sentencing resource for the Federal Judiciary, which provides sentencing data for the last five fiscal years (FY2020-2024), considers the following as it relates to the various sentencing options available here.

- Of 154 defendants whose primary guideline was §2S1.1, with a Final Offense Level of 23 and a Criminal History Category of I, the average length of imprisonment imposed was 32 months and the median length of imprisonment imposed was 35 months. *See* https://jsin.ussc.gov/analytics/saw.dll?Dashboard.

In the 2025 case, the Parties agreed to a total offense level of 23 or 25, depending on whether sophisticated means and/or role enhancements were given. *See* 2025 Case [DE 24].

- Applying the alternative total offense level of 23 identified in the plea agreement with a criminal history I, of the 234 defendants whose primary guideline was §2B1.1, the average

- length of imprisonment imposed was 35 months and the median length of imprisonment imposed was 36 months.

- For the alternative total offense level of 25 identified in the plea agreement with a criminal history I, of the 166 defendants whose primary guideline was §2B1.1, the average length of imprisonment imposed was 39 months and the median length of imprisonment imposed was 41 months.

*See* https://jsin.ussc.gov/analytics/saw.dll?Dashboard.

Finally, there was an analogous case filed in the District of Puerto Rico in 2024. In Case No. 24-cr-00366-MAJ twenty-five defendants were charged in a 48 count indictment with conspiracy to introduce misbranded drugs and to defraud the United States in violation of 18 U.S.C. § 371, conspiracy to Commitment health care fraud in violation of 18 U.S.C. § 1349 and 1347, unlicensed whole distribution of prescription drugs in violation of 21 U.S.C. § 331(t), 353 (e)(1)(A), misbranding of prescription drugs with intent to mislead and defraud in violation of 21 U.S.C. § 331(a), mail fraud in violation 18 U.S.C. §1341, misbranding of prescription drugs with intent to mislead and defraud in violation of 21 U.S.C. § 331(k), 352(f), and, unauthorized trading partner in violation of 21 U.S.C. § 331(t). $14 million was the approximate amount that the co-conspirators unlawfully enriched themselves with. While a number of the defendants had their cases dismissed, the court meted out sentences from three to five years of probation for most and incarceration of 60 days to fifteen months for others. To be clear, the underlying facts of this case are not spelled out in the available filings, however, the charges and the "loss" number are comparable.

**FACTOR 7: RESTITUTION**

There is no restitution in Case No. 19-cr-20674-DPG. *See Plea Agreement* [DE 1121]. Restitution in Case No. 25-cr-20154-DPG, per the plea agreement is $21,540,489.00 [DE 48].

**B. REQUEST FOR DOWNWARD DEPARTURE/VARIANCE PURSUANT TO *18 U.S.C. 3553, U.S.S.G.§ 2B1.1 APPLICATION NOTE 21(C), UNITED STATES v. WILLIAMS, 435 F.3d 1350 (11th Cir. 2006)*, AND *U.S.S.G § 5K2.0***

Mr. Rivera pursuant to 18 U.S.C. § 3553(a) and *United States v. William,* 435 F.3d 1350 (11th Cir. 2006), asks this court to consider a variance from the Advisory Guidelines range in the PSR. According to the offense level computations set forth in the PSR, "36", the advisory sentencing guidelines is 188 to 235 months incarceration. This guideline range is far in excess of any sentence that is "sufficient but not greater than necessary" for punishment under 18 U.S.C. §3553(a).

Mr. Rivera respectfully requests that this Court grant a downward departure and/or variance from the advisory guidelines range recommended herein, as any sentence within the advisory guidelines range would fail to account for the application of the § 3553 factors as to Mr. Rivera; specifically, the effect aggregation of the loss amount, in combination with the PSR's erroneously applied enhancements, overstate Mr. Rivera's criminal conduct herein.

A sentence in the range of 188 to 235 months' imprisonment is far in excess of any sentence that is "sufficient, but not greater than necessary." In determining the particular sentence to be imposed, the Court shall consider" the factors in subsections (a) (1) – (7). *See U.S. v. Crawford*, 407 F.3d 1174, 1178 (11th Cir.2005) (noting "the district court remains obliged to 'consult' and 'take into account' the Guidelines in sentencing"). "After it has made this calculation, the district court may impose a more severe or more lenient sentence as long as the sentence is reasonable." *Id.* at 1179; *See also U.S.S.G. §2B1.1, App. Notes 21(C)*.

The § 3553 factors as applied to Mr. Rivera were addressed individually and in detail above. The factors all weigh in favor of Mr. Rivera's position herein that this Court should depart downward from the proposed guideline sentence herein and sentence him to a below-guidelines sentence that lines up with the Parties' agreement, 37 and 46 months respectively, assuming the Court overrules all or some of Mr. Rivera's objections. A downward departure is especially warranted here for several compelling reasons.  First, the only coconspirator sentenced in the 2025 case was sentenced to 33 months. Second, Mr. Arencibia and Mr. Rivera are the only coconspirators with a loss amount exceeding $21 million -- an amount the Government required them to stipulate to -- while the other coconspirators were assessed a loss amount of only $7.2 million. Third, the PSR applies various enhancements without adequate factual support.  Finally, Mr. Rivera's loss amount in the 2025 case, particularly when aggregated for purposes of grouping, significantly overstates Mr. Rivera's criminal conduct.

**1.** *<u>The Loss Amount Overstates the Seriousness of Mr. Rivera's Conduct</u>*

Application Note 21 (C) in U.S.S.G. § 2B1.1 states in pertinent part: "There may be cases in which the offense level determined under this guideline substantially overstates the seriousness of the offense. In such cases, a downward departure may be warranted."  Courts interpreting this provision have applied it to situations where the offense level under the Guidelines has overstated the defendant's conduct in the case. This application has usually resulted in cases where the courts have found that the defendant's pecuniary gain has been minimal or not at all in relation to the overall loss amount. *See United States v. Kushner*, 305 F.3d 194 (3d Cir. 2002) (the amount of intended loss can overstate the seriousness of the offense); *United States v. Walters*, 87 F.3d 663

(5th Cir. 1996); (U.S.S.G. § 5K2.0 provides a statutory basis for the desired departure); *United States v. Forchette*, 220 F. Supp. 2d 914 (E.D. Wis. 2002); *United States v. Costello*, 16 F. Supp. 2d 36 (D. Mass. 1998); *United States v. Connors*, 2007 WL 2955612 (E.D. 2007); *United States v. Algahaim*, 842 F.3d 796 (2d Cir. 2016) (where the Commission has assigned a rather low base offense level and increased it significantly by a loss enhancement, that combination of circumstances entitles a sentencing judge to consider a non-Guidelines sentence).

Here, the Government and the undersigned counsel agreed to a total offense level between 21 and 23/25, resulting in no greater than 37-46/57 months, if both sophisticated means and role enhancements applied. *See Plea Agreements, 2019 Case [DE 1121] and 2025 Case [DE 28]*. In calculating Mr. Rivera's sentence, probation grouped the cases and assessed numerous enhancements, including four (4) levels under USSG §2B1.1(b)(8)(B), two (2) levels for sophisticated means, and two (2) levels for role enhancement and no credit for Mr. Rivera's criminal history, i.e., he qualifies for a zero-point offender. Additionally, the Court should also consider that the coconspirators were only assessed with a loss amount of $7.2 million while Mr. Rivera was assessed $21,540,489. When aggregating the loss amounts against Mr. Rivera, there is a two-point difference if Mr. Rivera's aggregate amount had been $14.5 million instead of $28,840,489.00.

Accordingly, the PSR's total offense level of 36, which results in a guideline range of 188 to 235 months is excessive.

As set out in his Objections to the PSR [DE 1151], Mr. Rivera was not an agent of or employed by any company or organization. Moreover, the offense here did not involve sophisticated means to justify a two-level increase pursuant to §2B1.1(b)(10)(C) nor should Mr. Rivera be assessed an aggravating role. Accordingly, even if the Court finds that that two cases

must be grouped under section 3D1.1, removing probations' erroneous inclusion of sophisticated means, role enhancement, and its additional four (4) level enhancement under section 2B1.1(b)(8)(B), Mr. Rivera would be at a total offense level of 25, and taking the 2-point zero point offender decrease, Mr. Rivera would be at a total offense level of 23, from which the Court could depart downward to the range agreed to by the Parties.

## LETTERS OF SUPPORT

The Defendant has filed a separate pleading "Letters of Support" as an addition to this Sentencing Position. These letters are from the family and friends of Mr. Rivera. This correspondence represents the spectrum of people who have their lives most intimately intersected with his. The letters all attest to his character and commitment to family. The letters are heartfelt, honest, and moving. They offer the Court a perspective of a human being as they know him. His family and friends have an obvious bias towards him. More than anyone else the Court's sentence will also be their sentence. The poet suggested that: "No man is an island." As human beings we are all dependent upon one another. These letters, perhaps not as articulate as John Donne, provide eloquent testimony to their feelings.

Counsel does not seek to detract from the letters which provide a powerful statement of who Mr. Rivera is, but offers a summary of the thoughts articulated in some of the letters:

**Erik Y. Rolon Suarez:** A long-standing friend of Mr. Rivera writes "…I would like to particularly highlight his devotion to his parents. Jose accompanied his father until his final days, ensuring he received the best care and attention possible. Today, he maintains that same level of dedication to his mother, assuming a central role in her well-being."

**Richy Miranda-Cortese:** another long-standing friend of Mr. Rivera observes "…his unwavering dedication and compassionate care for his parents during their golden years, a time when they needed him most, stands as a powerful statement to his loyalty, selflessness, and core family values."

**Lynette Chico:** a friend of Mr. Rivera who she describes as her brother writes: "…He is an exemplary son, taking care of his mother with love and patience, who has lived with him for several years and faces different health conditions. Jose is aware of everything, without complaining, with that calm and supportive character that distinguishes him so much."

## V. CONCLUSION

Mr. Rivera owned up to his culpability. Is Mr. Rivera irredeemable? Can we entirely eliminate the possibility that he is subject to redemption? "Redemption" means to deliver by paying a price.[6] What is the price Mr. Rivera should pay for his actions?

**WHEREFORE**, for the reasons detailed herein, the Defendant, Jose Armando Rivera, respectfully requests that this Court adopt the objections to the Presentence Investigation Report, calculate separate sentences for the two cases Case No. 19-cr-20674, level 21, criminal history category I (37-46 months) and Case No. 25-cr-20154, level 23, criminal history category I (46-57 months) with the sentences to run concurrent, grant a variance as set forth in the arguments and grant such other relief the Court deems appropriate under the circumstances.

Mr. Rivera and Counsel thank this Court for considering his Sentencing Memorandum. Counsel will have further remarks at the time of sentencing.

---

[6] Redemption is the English translation of the Greek word *apolutrosis,* meaning "to purchase in the marketplace."

Respectfully submitted,

**Michael R. Band, P.A.**
Counsel for Mr. Rivera

1224 Alfred I. DuPont Building
169 East Flagler Street
Miami, Florida 33131
Tel: 305.372.8500
Fax: 305.372.8504
Email: michael@bandlawfirm.com

s/ *Michael R. Band*

Michael R. Band
Florida Bar. No. 228338

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on the 22nd of October 2025, a true and correct copy of the foregoing was furnished via the CM/ECF system to all parties designated to receive electronic filings in this cause.

s/ *Michael R. Band*

Michael R. Band